# CHARLESTON.

ROWLAND LAND CO. *v.* BARRETT.

Submitted March 22, 1910.   Decided January 23, 1912.

1. EXCEPTIONS, BILL OF—*Scope and Contents.*
   A paper read as evidence to the jury, and described in a skeleton bill of exceptions in such manner as to make its identity reasonably certain, is properly a part of such bill of exceptions if it appears to be copied by the clerk into any part of the certified record. Its identity, and not its position in the record, is essential.   (p. 704).

2. TAXATION—*Forfeitures—Sale of Lands Forfeited.*
   A recital in a decree, made in a proceeding to sell forfeited

and delinquent lands, that the land was forfeited in the name of
a certain designated former owner, is *prima facie* evidence of
the fact of such forfeiture, and of the court's jurisdiction to de-
cree a sale of the land. (p. 705).

3.  FORMER CASE APPLIED AND DISTINGUISHED.
    The rule in *Stockton* v. *Morris*, 39 W. Va. 432, discussed and
    applied. and also distinguished.   (p. 706).

4.  DEEDS—*Operation and Effect—Evidence of Title.*
    The recital in a deed that the grantor obtained title by a cer-
    tain other deed, is not evidence against an adverse claimant, of
    such grantor's title.   (p. 708).

5.  FORMER DECISION   APPROVED AND APPLIED.
    Point 3 of syllabus in *Wilson* v. *Braden*, 48 W. Va. 196, ap-
    proved and applied.   (p. 709).

Error to Circuit Court, Raleigh County .

Action by Rowland Land Company against R. E. Barrett.
Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*O. P. Fitzgerald, jr.* and *Brown, Jackson & Knight,* for plain-
tiff in error.

*McGinnis & Hatcher,* and *A. A. Lilly,* for defendant in error.

WILLIAMS, JUDGE :

Plaintiff brought ejectment to recover two tracts of land, one
containing 1176 acres and the other 4217 acres, both described
by metes and bounds.   Defendant disclaimed title to all, except
two contiguous tracts containing 188 acres, situated at the forks
of Big Coal River, in Raleigh county, which he describes by giv-
ing the exterior boundaries, as if one tract, and pleaded not
guilty, as to said 188 acres.

Counsel for defendant in error insist that the bill of excep-
tions does not incorporate the documentary evidence.   It is
what is commonly called a skeleton bill of exceptions, and it iden-
tifies grants and deeds, which were read as evidence, by refer-
ence to their dates, the names of the grantors and the grantees,
and, sometimes also, by stating the number of acres granted.
Such data are then followed by a parenthetical clause directing
the clerk to copy the paper into the record at that place.   That

is sufficient description of the paper read to enable anyone to identify it with reasonable certainty. That is all the law requires. It clearly falls within the rule laid down in *Tracy's Adm'r.* v. *Carver Coal Co.,* 57 W. Va. 587, and *Dudley* v. *Barrett,* 58 W Va. 235. It is no objection that the documents referred to happen not to be copied into the bill of exceptions at the points designated. It is enough if they appear anywhere in the record, and are sufficiently described to be identified with reasonable certainty. Orderly arrangement, of course, is desirable, and should be followed by the clerk in making up the record, but the want of it does not necessarily vitiate the bill of exceptions.

Plaintiff claims to derive title from the Commonwealth of Virginia, by deeds from Alfred Beckley, commissioner of delinquent and forfeited lands, one to Jacob Pettry, for what is known as the Marsh Fork parcel of land, and the other to John F. Clay and Richard Scott, for the Clear Fork tract, dated, respectively, 28th of January, 1842, and 2nd of July, 1841, and by subsequent, intermediate conveyances.

The court permitted plaintiff to read a number of deeds as evidence, in its chain of title, over defendant's objection, and later, after all its evidence had been introduced, on motion of defendant, excluded a number of them, including the deeds from the commissioner of forfeited and delinquent lands. Why these deeds were excluded does not appear. It may have been because these was no evidence that the commissioner was authorized, by decree of the court, to make conveyance. But that is no reason for their rejection, because the commissioner of forfeited and delinquent lands was directly empowered, by statute then in force, to make deed to the purchaser, upon full payment of the purchase money. Sec. 9, ch. 8, of an act of the General assembly, passed March 15, 1838. Or, they may have been excluded because the court regarded the report of the commissioner relating to the forfeiture, as indispensable to prove title in the state, and jurisdiction in the court. Those reports were shown to be lost, and there was no proof of their contents. But that would not justify the exclusion of the deeds in view of the recitals in the decrees made in the cause. The decrees recite that the land was forfeited in the name of Rutter and Etting, and they also author-

ize the commissioner to sell. Such recitals are *prima facie* evidence of title in the state by forfeiture, and title being proven thus to be in the state, there could be no question of jurisdiction in the court. *Feder* v. *Hager,* 69 W. Va. 160, 71 S. E. 107. There was no evidence to rebut this *prima facie* proof that the state had title. Again, the deeds may have been rejected because of the following clause in the *habendum* to the deeds, to-wit: "Subject, however to the rights of occupant claimants according to the provisions of the several acts of the assembly relating thereto." The court may have taken the view that that clause operated to make the grant an inclusive one, excepting parcels of lands included within the exterior boundaries, and, there being no proof of location of the parts excepted, that it fell within the rule declared in *Stockton* v. *Morris,* 39 W. Va. 432, and rendered uncertain the description of plaintiff's land. But we do not interpret that clause to be an exception from the operation of the grant, of any part of the land described. The deed does not mention any particular claimants, nor otherwise describe any part of the land to which the language might apply. There is a wide difference in the meaning of the language above quoted. and the language used in the grant involved in *Stockton* v. *Morris,* and there construed to be an exception of certain lands from the operation of the grant. In that case the grant declared that the survey upon which it was founded included "nine thousand and sixty-five acres, the property of sundry persons," and then it proceeded to name the various claimants, and to give the location of the several parcels of land claimed by them, and concluded as follows: "and this grant shall be no bar in either law or equity, to the confirmation of titles to the same, as before mentioned and reserved, with its appurtenances." That is an express reservation of title in the commonwealth, with the right given to the various claimants, to perfect their respective claims by obtaining grants from the commonwealth. In the present case it does not even appear, by the commissioner's deed, that there were, in fact, any occupant claimants, nor that the state meant to reserve title to any part of the land included within the bounds of the grant. It was a grant of all the title then in the state, to be held by the grantee, subject to the rights of occupant claimants, *if any such there were,* a fact apparently un-

known to the commissioner so far as it appears from anything contained in the deed. The provision in the *habendum* clause is not an *exception* from the operation of the granting clause of any portion of the land described by metes and bounds. It is simply placed there to show a compliance, by the commissioner, with the statute then in force which protected certain occupant claimants, who then had the state's title, by operation of law, under junior grants from the commonwealth, to any portion of the land within the limits of the forfeited grant. Secs. 14 and 17 of the act above cited. So far as it appears from the deeds from Alfred Beckley, commissioner of forfeited and delinquent lands, they constituted grants, without exception, of all the state's title to all the land described by the metes and bounds of the grant. As apropos to the point here discussed, see *State* v. *Jackson,* 56 W. Va. 573.

But this question arises: Was the exclusion of the commissioner's deed prejudicial error? If there is a material fault in plaintiff's chain of title at any point which breaks its continuity, it destroys the value of the whole chain as evidence of paper title. A deed from Pyrrhus McGinnis and wife to Augustus Pack, dated August 28th 1854, constitutes the third link in plaintiff's chain of title to the Marsh Fork tract. That deed contains the following clause: "To have and to hold the said described & bounded tract or lot of 6776 acres, save & excepting always such occupant claims as were plotted out by the Commissioner of Forfeited & Delinquent lands upon the Original Map filed by him with the report of his proceedings as to sale of the Rutter & Etting of 174,673 13765 & 4160 acres in the Clerk's Office of Fayette Superior or Circuit Court & to which map reference is here especially made and also excepting & reserving 50 acres in Forks of the Marsh & Clear Forks, unto him, the said Augustus Pack, his heirs & assigns for ever." This is an exception, in express terms, of the claims of occupants whose claims were plotted out on the original map filed by the commissioner of forfeited and delinquent lands. It makes special reference to the map, presumably for the purpose of identifying and locating the exceptions. This map is proven to have been lost, and no evidence was offered to prove that the land in controversy is not within some one, or more, of the excepted par-

cels.   The lack of such evidence rendered the description of plaintiff's land uncertain.   It amounts to a failure of proof of its location.   The plaintiff in ejectment carries the burden of proving, not only title to the land, but also its identity.   The court did not err by excluding this deed, after ascertaining that plaintiff had failed to locate any of the excepted parcels plotted out on the map.   This deed clearly comes within the rule of *Stockton* v. *Morris, supra.*

When this conveyance was made, Pyrrhus McGinnis appears to have had title to only one undivided half of the land.   The deed from Pettry and wife to him, 24th of April 1850, grants "one moiety" only of the tract.   True, the deed contains the following recital: "The other moiety or half of said tract having heretofore been conveyed by the said Jacob Pettry to the said McGinnis."   But there is no other proof than this recital, of McGinnis' title to one undivided half of the land.   But this defect relates only to quantity of interest, and not to quality of title.

Sally J. Dickinson, executrix of H. C. Dickinson, deceased, and the Kanawha Valley Bank, by deed dated 3rd of June 1886, assumed to convey the whole of a tract of 4217 acres on Marsh Fork to J. Harvey Rowland, the said executrix conveying the undivided seven-eighths, and the Bank, the undivided one-eighth.   The land had been devised to Mrs. Dickinson by her husband, H. C. Dickinson, but how he came to be the owner of more than one undivided sixth, does not appear by the record. There was a deed from Augustus Pack to him and five other grantees, in equal proportions, and the record is silent as to how Mrs. Dickinson acquired any greater interest in the land than is shown by that deed to her husband.   The bank appears to have claimed title to the one-eighth, by deed from Wesley Mollohan, trustee.   The deed to the bank recites that the said one-eighth was conveyed to him as trustee by J. D. Moore and wife, by deed dated May 8th 1875.   Joseph D. Moore is one of the joint grantees with Henry C. Dickinson, in the deed from Pack.   The deed from Moore to Mollohan, trustee, if any such there be, is not in the record.   The recitals in the Mollohan deed are not evidence against a stranger, to prove either title in the trustee, or his authority to sell and convey.   Pyrrhus McGinnis, the remote grantor, having had legal title to only one undivided half,

as we have before pointed out, it follows that H. C. Dickinson and his co-grantees acquired legal title to only one undivided half. Dickinson, therefore, had legal title to only the one-sixth of one-half, or one undivided twelfth. J. Harvey Rowland, plaintiff's immediate grantor, acquired no greater interest than Dickinson had, so far as the record shows. So that, even if plaintiff had located the reservations and exceptions in favor of occupant claimants, in the deed from Pyrrhus McGinnis to Augustus Pack, and thereby have identified its land, it still has not proven title to more than one undivided twelfth of the Marsh Fork tract.

In plaintiff's chain of title to the Clear Fork tract there is a deed from James H. McGinnis, special commissioner, to C. L. Thompson. The land appears to have been sold in a suit instituted in the circuit court of Raleigh county, styled *H. T. McVey, Arm'r. of S. H. Higginbotham* vs. *Joseph B. Underwood, Adm'r. of Richard Scott, et al.* The papers in the cause are lost, and could not be found, after diligent search, and the court permitted plaintiff to prove their contents. But the proof does not meet the legal requirement in such a case. There is testimony of a general and indefinite character respecting the purpose of the suit. But a fact, most material to be proven, was entirely omitted. No attempt appears to have been made to prove that the then holders of the legal title were before the court. It does not even appear who they were. A contract of sale of the land by Richard Scott to Samuel H. Higginbotham, was the basis of that suit, which was either a suit to enforce the contract, or to rescind it, it does not clearly appear which was the purpose. The contract is dated August 26th 1854, and it recites that the land sold is "Scott's proportion of a certain tract or parcel of land bought jointly by the said Scott and Clay" at a sale by Alfred Beckley, commissioner of forfeited and delinquent lands. Higginbotham paid $1,000 down, and was to pay $600 on the 1st day of March 1857. But, whatever may have been the purpose of the bill, the court decreed a rescission of the contract, and held that the $1,000 which had been paid by Higginbotham, was a lien on the land in favor of Higginbotham's estate, and decreed a sale of the land to pay it. The land was sold, and the sale confirmed, and James H. McGinnis was appointed a com-

missioner to make conveyance to C. L. Thompson, who was reported to be the purchaser. Said commissioner did make a deed, and that deed was permitted to be read as evidence, over the objection of defendant. The deed should have been rejected, because there was no proof whatever that the heirs of Richard Scott, in whom the title then was, were before the court. *Wilson* v. *Braden*, 48 W. Va. 196, (Point 3 of Syllabus), reaffirmed in *Ronk* v. *Higginbotham*, 54 W. Va. 137. The exclusion of this deed would cause a break in the chain of title to the Clear Fork tract.

In view of plaintiff's failure to identify its Marsh Fork tract of land, in that it did not locate the exceptions in the deed from Pyrrhus McGinnis to Augustus Pack, and in view of the fact that the deed from J. H. McGinnis, special commissioner, to C. L. Thompson for the Clear Fork tract, should have been excluded as evidence of paper title, and in view of the further fact that there is no evidence tending to prove possessory title in plaintiff to any part of the land in controversy, it cannot complain of the verdict, which the jury found for the defendant.

It is not necessary to discuss the other assignments of error, relating to instructions and to admission of evidence for defendant, and rejection of certain other evidence offered by plaintiff. Because, even if such other assignments should be well taken, they would not constitute prejudicial error.

In disposing of plaintiff's motion to set aside the verdict, the court permitted defendant to modify his disclaimer by enlarging it, so as to include a small strip of land along the Clear Fork, outside of the lines of the 38 acre patent, and outside of the fence "as laid down on surveyor Wilson's map extending from 'K' to where said fence crosses said outside line of said 38 acre tract, which said small strip of land outside of the lines and the fence aforesaid is not claimed by defendant." This had the effect to enlarge defendant's original disclaimer, and consequently, to reduce the amount of land claimed by him. In view of what we have hereinbefore said, we do not see how this subsequent disclaimer could have prejudiced plaintiff. It might have had a different effect if plaintiff itself had proven title to the strip of land disclaimed. It might then have appeared that it should have had a verdict for such portion of the land, as it

was in issue. But it is unnecessary to decide what would have been the effect in that event, and we do not say. All that we do decide is that, because of plaintiff's failure to prove title, it is not prejudiced by this action of the court in permitting the defendant to reduce his claim after verdict.

The judgment of the lower court will be affirmed.

*Affirmed.*