# CHARLESTON.

STOCKTON *et al* v. MORRIS *et al*.

Submitted February 7, 1894.—Decided April 16, 1894.

(HOLT, JUDGE, absent.)

1. GRANT—INCLUSIVE SURVEY.

A grant from the commonwealth of Virginia upon an inclusive survey issued under act of June 2, 1783, including within its bounds prior claims therein reserved, passes no right or title whatever to the lands covered by such prior claims. (p. 435.)

2. GRANT—EJECTMENT—BURDEN OF PROOF.

A plaintiff in ejectment, to recover under such a grant, must, in addition to showing the exterior boundaries of the grant, locate the specific reservations, if any, therein, and, as to a general reservation, must show and locate prior claim or claims in quantity sufficient to equal such general reservation, excluding the land of the defendant. The burden is then on the

defendant to show that his land is within the reservation of the grant. (p. 439.)

3. GRANT.

    Certainty required in entries discussed. (p. 440.)

PAYNE & GREEN, for plaintiffs in error cited 21 W. Va. 74; 8 Ired. 470; 81 K'y 365; 10 W. Va. 416; 3 Head. 47.

BROWN, JACKSON & KNIGHT, MOLLOHAN & McCLINTIC for defendants in error cited 12 Hen. Stat. 670; Id. 709; 30 W. Va. 709; 5 Pet. 81; 5 Cr. 34.

I.—*It is not incumbent upon the plaintiff claiming under an in-inclusive grant from the Commonwealth of Virginia to locate the reservations in the grant in order to recover upon his title under such grant in ejectment.*—6 Mun. 38; 4 Rand. 365; 10 W. Va. 387; 21 W. Va. 65; 140 U. S.; 14 Wall. 143.

II.—*It is incumbent upon the defendant in such suit, seeking to shelter under such reservations to show himself within it.*— See cases under point 1, and 1 Jones 13; 8 Iredell 470; 82 N. C. 481; 64 N. C. 295; 3 Head. 47.

III.—*The Kentucky rule casting the burden of locating the exceptions in the grant, upon the plaintiff limits the burden to such exceptions as are specified and identified by name and description in the grant itself, and does not extend to general reservations.* — Madison *v.* Owens, Lit. Sel. Cases; 5 Pet. 81.

IV.—*No instructions having been asked and no exceptions taken to the evidence, the inquiry in this Court is limited to the question of the right of the jury, upon all the facts disclosed, to find for the plaintiffs, or find, either that the 5,000 acre entry was void, or that it was located elsewhere, or not sufficiently established where claimed by the defendants, or had been lifted, or abandoned, before the said Steele survey was made. If the jury could reasonably find any one of these facts, their verdict must be sustained, and under the law as repeatedly announced by this Court, every reasonable inference that may be drawn from the evidence to support the verdict must be given full weight by the appellate court.*—32 W. Va. 487; 16 W. Va. 325; 21 Gratt. 214; 26 W. Va. 341; 21 W. Va. 712; 21 W. Va. 756.

J. S. CLARK, for defendant in error:

I.—*The plaintiff has established his title to the* 19,500 *acre grant which gives him a prima facie title to the land within the limits of that grant. If the defendant asserts that his land is within the exceptions, is is incumbent upon him to prove it.*—6 Munf. 38; 4 Rand. 365; 10 W. Va. 385; 21 W. Va. 65; 30 Gratt. 583; 75 Va. 557; 5 Pet. 80; 14 Wall. 120; 6 Litt. Sel. Cas. 281; 140 U. S. 273; Hutch. Land. Tit. § 552–563; 6 Pet. 302; 1 Jones (N. C.) 13; Co. Lit. 47A; 1 Plow. 103; Id. 361; 82 N. C. 481; 8 Ired. 470; 64 N. C. 295; 3 Head 47; 81 K'y 365.

II.—*This rule does not conflict with any principle of law.*— 14 Howard 282; 99 U. S. 180.

BRANNON, PRESIDENT:

Action of ejectment in the Circuit Court of Fayette county by Charles F. Stockton and others against Fenton Morris and William Foster resulting in a verdict and judgment for plaintiffs and a writ of error sued out by defendants, they complaining that a motion to set aside the verdict was overruled.

The plaintiffs derive title under a grant from the commonwealth of Virginia for nineteen thousand and five hundred acres, dated November 11, 1796, based on an entry made January 21, 1795, surveyed March 21, 1795, and under a grant to James Swann for two thousand and one hundred and thirty two acres, dated May 18, 1803, lying within the Steele grant. The defendants derive title under a grant from the commonwealth of Virginia to George P. Huddleston and William A. McMullin for six hundred and fifty seven acres, dated May 1, 1856. The Steele grant is what is called an "inclusive survey;" that is, one which includes within its boundáries prior claims excepted from the computation of the area within such boundaries, and excepted in the grant. The grant to Steele, issued under act of June 2, 1788, authorizing grants upon inclusive surveys contains the following clause of reservation:

"But it is always to be understood that the survey upon which this grant is founded includes, nine thousand and sixty five acres, the property of sundry persons, viz.: William Hunter, three hundred and thirty acres on Morris

creek, near the head, surveyed the 25th of June, 1785. Joseph Childers, four hundred acres in Nopper's bottom, above Morris creek, surveyed the 22nd of May, 1786. Henry Banks enters three thousand acres at the falls of Kanawha, to extend up Gauley and down Kanawha, entered the 1st of February, 1787; also, three thousand nine hundred and fifty acres, in three entries, to join, and extended down Kanawha for quantity, entered the 26th day of February, 1788.   William Morris and Andreason Donnally, two hundred acres on Kanawha, opposite the house of John Jones; and Jacob Lockhart, deceased two hundred acres on Morris creek, joining Morris's land ; and nine hundred and eighty five acres of other prior claims (exclusive of the above quantity of nineteen thousand and five hundred acres).  All of which having a preference by law to the warrants and right upon which his grant is founded, liberty is reserved that the same shall be firm and valid, and may be carried into grants; and this grant shall be no bar in either law or equity, to the confirmation of titles to the same, as before mentioned and reserved, with its appurtenances."

The grant under which the defendants claim lies wholly within the exterior boundaries of the Steele survey, and part of it within the Swann survey, if that be here material.

The following important legal question has been discussed in this case :—Must a plaintiff in ejectment claiming under such an inclusive survey locate the prior claims reserved from it, and show that the land, which he would recover from the defendant, does not lie within such prior claims, or must the defendant locate such prior claims and show that he is within them ?

It is a fundamental principle in the action of ejectment that the plaintiff shall show title to the land which he seeks to recover.   The plain intent in such inclusive grant is that it shall not confer any right or title whatever to the land covered by the prior claims, because they are expressly excepted from the operation of the grant.   To such prior claims the grantee is a stranger.   He gets no title.   He He does not get, to such prior claims, a title subject only to

those owning land under the prior claims, so that if their rights thereto fail his becomes good against everybody else, but he gets no shadow or color of title. If those prior claims are not surveyed, or not carried into grant, they go, not to such grantee, but back to the common-wealth, as settled by several decisions. This being so, how can a plaintiff meet the rule requiring him to show title to the land in possession of the defendant without locating and identifying these prior claims and showing that the defendant's possession is not within and protected by them, and that, therefore, he is upon the land granted to him (the plaintiff)?

It is said, however, that it is a rule of law that he who would claim to be within an exception must bring himself by proof within it. This rule does not here apply. These prior claimants do not claim under the reservation or exception. The instrument containing it is not the instrument conferring title upon them. But they claim under distinct instruments vesting them with title and have no need to call upon such exception. If this latter view were not tenable, still there is the imperative rule, that the plaintiff in ejectment shall make certain what land he has title to; and it would repel the application in such case of the rule, that one claiming under an exception must prove himself within it. The plaintiff says that the defendant entered upon his land. He must prove this. To do so, he must prove the exterior lines of his grant, all concede; but they are not his only lines, for the lines of the reserved tracts are just as much his boundary lines as those exterior lines. He can not get an inch of land inside them. Why call on defendant to locate plaintiff's land? It amounts to this.

Again, it is said that requiring a plaintiff to prove, that a defendant is not within a prior claim, is requiring him to prove a negative. In a fruitless effort, in the case of *Madison* v. *Owens*, Litt. Sel. Cas. 281 (found in 5 Litt.) to convince the court of appeals of Kentucky of its error in holding the position above stated, Henry Clay made this point.

In the first place it is not invariably true that a party is not required to prove a negative. "He who in a court un-

dertakes to establish a claim against another or to set up a release from another's claim against himself, must produce proof necessary to make good his intention. This proof may be either affirmative or negative. Whatever it is, it must be produced by the party who seeks, forensically, either to establish or defeat a claim." Whart. Ev. § 356.

In the second place, it does not require proof of a negative. It simply calls upon the plaintiff to prove that a prior claim exists, and covers certain ground, and that the defendant's land lies elsewhere—matters that are affirmative and called for daily in the location of surveys and deeds. It is only proving lines and corners—affirmative matters.

I now refer to decisions bearing on this subject: In *Hopkins* v. *Ward*, 6 Munf. 38, it is true, a contrary principle was held; the court saying in a few words without giving any reasons or arguing the subject, that the plaintiff in ejectment was entitled to all the land within the boundaries of his grant subject to the reservations, and entitled to recover all said land except such as the defendants might show themselves entitled to under the reservations. But in the later case of *Nichols* v. *Covey*, 4 Rand (Va.) 365, it is held that a patent on an inclusive survey "does not pass to the patentee the title of the commonwealth in and to the lands covered by such prior claim, subject only to the title, whatever it may be, in the prior claimant; but if that title is only a prior entry, and becomes vacated by neglect to survey and return the plat, any one may lay a warrant on the same as in other cases of vacant and unappropriated lands."

In *Patrick* v. *Dryden*, 10 W. Va. 387, literally the same words are laid down in the syllabus as in the case of *Nichols* v. *Covey*, above quoted: and the opinion of Judge Coulter in the latter case is decidedly approved by Judge Haymond in the opinion.

In the later case of *Bryant* v. *Willard*, 21 W. Va. 65, the syllabus is as follows: "Under the act of June, 1788, authorizing the governor to issue grants with reservations of prior claims included within the boundaries thereof, the reservations in such grants under said act exclude from

their operation all lands held by prior claimants at the dates of the surveys on which such grants are founded, within the exterior boundaries of the grants, whether the title was only inchoate, or had been perfected by grants. Under an inclusive grant issued by virtue of said act, containing a general reservation of a specified quantity of land for prior claimants, the grantee acquires no title whatever to the land so reserved; and in such case if the title of any such prior claimant becomes forfeited for non-entry or non-payment of taxes, the title thus forfeited will not vest in such inclusive grantee under the act of March 22, 1842."

In *Trotter* v. *Newton,* 30 Gratt. 582, it is held that under an inclusive grant no right to land reserved goes to the grantee. The Supreme Court of the United States, in *Scott's Lessee* v. *Ratliffe,* 5 Pet. 81, a Kentucky grant "including within its bounds five hundred and twenty two acres entered for John Preston; four hundred and twenty five acres, for William Garrard; both claims have been excluded in the calculation of the plot"—was held to pass no title to the excluded land. And the same court, in the case of *Armstrong* v. *Morrill,* 14 Wall. 120, which went up from this state, held that such inclusive grant excluded from its operation all lands held by prior claimants at the date of the survey, whether the title to them was inchoate or perfected by grants. In the very late case decided by the United States Supreme Court in May, 1891 [*Halstead* v. *Buster,* 140 U. S. 273 (11 Sup. Ct. 782)] which was appealed from this state, it was again held that under such inclusive grants no title to the lands reserved passes to the grantee, and if such reserved lands are forfeited the grantee acquires no right to the forfeited title under Act March 22, 1842. The opinion approves the opinion by JUDGE SNYDER in *Bryant* v. *Willard,* cited above.

Now, more particularly as to the point that in ejectment the plaintiff must locate the reserved land and not the defendant, all the cases above cited logically lead to that result, except *Hopkins* v. *Ward,* but several expressly assert that proposition. Judge SNYEER, in delivering the opinion in *Bryant* v. *Willard,* alluding to the holding in *Hopkins* v.

*Ward* that the defendant must show himself within the excluded claims, says that the more recent and better considered cases restrict, if they do not overrule, *Hopkins* v. *Ward;* and though he did not decide the point, as it did not arise as essential to the decision, he plainly asserts substantially the proposition, that not the defendant, but the plaintiff, must identify the reserved lands.

The court of appeals of Kentucky, in *Madison* v. *Owens,* *supra*—an action involving a Virginia patent—held, that "where a patent calls to exclude entries belonging to other persons, by name and designation of quantity, but to include them within the boundaries of the patent, the patentee can not recover in ejectment without showing that the defendant is not within the bounds of the excluded claims." The court gave as the reason for this holding that the patent conferred no title for the excluded lands. It further said there might be great difficulty in locating these excluded claims, but that was the fault of the patentee in executing the survey—in not defining them—but that should not prejudice others, by giving him more land than he was entitled to.

The United States Supreme Court, in *Scott's Lessee* v. *Ratliffe, supra* (Chief Justice Marshall delivering the opinion) found no error in an instruction "that if the plaintiffs did not show to their satisfaction that the defendants re sided within the plaintiffs' grant, and outside of the land claimed of Preston and Garrard, they ought to find for the defendants," thus pointedly sustaining the proposition. The lands of Preston and Garrard were those excluded by the inclusive patent.

In delivering the opinion of the United States Supreme Court in *Armstrong* v. *Morrill,* Mr. Justice Clifford applied to a Virginia grant the Kentucky decision of *Madison* v. *Owens,* saying that where the exterior boundaries of a survey under the Virginia act of June, 1788, "includes tracts belonging to prior claimants, the patentee can not, in such case, recover in ejectment without showing that the tract claimed by the defendant is not within the bounds of the excluded claims." Hence we hold, that a plaintiff in ejectment, not the defendant, must locate the reserved lands so

as to show that the defendant's possession is not covered by them.

Then apply these principles to the present case. There is the general reservation of nine hundred and eighty five acres, which the plaintiff did not locate. On February 7, 1787, Henry Banks made in Greenbrier two entries, one in the following language : "Also enters five thousand acres in different entries, to include the vacant land joining the military survey, rights of settlements and prior. locations from the Three Mile creek on the Great Kanawha binding with the river and prior locations up the said river 'to the falls of the Great Kanawha for quantity by warrants for nine thousand seven hundred and fifty five acres, No. 389. This February 7th, 1787." It lies within the Steele survey and, it seems, covers the land in controversy. It is not expressly reserved out of the Steele survey, but there is reserved a quantity of nine hundred and eighty five acres besides other claims specifically mentioned, and it may be in the Banks five thousand-acre entry.

In *Patrick* v. *Dryden, supra,* in a patent for twenty seven thousand acres were certain tracts specified as reserved, and "eight hundred and sixty one acres of other claims, not here inserted." There was shown a Clendennin entry, not excepted in said patent, lying except a small part within said twenty seven thousand acres, and the three hundred and twelve and one half acres claimed by the defendants lay within the Clendennin entry. Judge Haymond said that, for aught that appeared to the contrary, it might be that such part of the Clendennin as was not absorbed by certain other Walker tracts shown to lie within it (seven hundred and fifty three acres) constituted a part of said eight hundred and sixty one acres. So we can, in this case, say that for anything shown to the contrary, the nine hundred and eighty five acres reserved in the Steele may be within the Banks—or part of the Banks—five thousand acres.

But it is said the Banks entry is void for uncertainty. It would be a tedious and confusing, rather than an enlightening, work to refer to the very numerous Virginia, Kentucky and West Virginia cases involving the question of

the certainty required by law in entries. In *McNeel* v. *Herold*, 11 Gratt. 309, the principle is clearly discussed by Judge Lee, and authorities cited. An entry, to be valid, must call for objects possessing such notoriety in themselves or so particularly described that other persons by care and diligence may find them. Entries generally call for some prominent notorious object directing attention to the neighborhood of the land (and this is called the "general" or "descriptive" call) and contain a reference to objects which more specially describe or locate the land entered (and these are denominated the "particular" or "locative" call). The general or descriptive calls and the particular or locative calls must possess that reasonable definiteness, that will put a subsequent adventurer on his guard, and the locative calls, to be found within the descriptive calls, and not inconsistent with it or with one another. It is not necessary, where there are several calls, that all should be so certain as to be found by a subsequent locator; but it is necessary, that some one or more of the leading calls should be notorious and known or so described, that other persons by care and diligence may find them and distinguish the land entered from the adjacent residuum.

I think this entry is sufficient. It calls for a large river and for a tributary creek—imperishable, natural monuments—for general and descriptive calls, leading the subsequent locator to the spot, and then calls for binding on the river up to the well-known Kanawha falls, and on the military survey, and other prior claims, which existed of record and were ascertainable, we are to assume, for locative or particular calls, and then calls for the inclusion of enough vacant land to make five thousand acres, the call "for quantity" being a very common and intelligible call in land-location among surveyors. The entry, on its face, is not void for uncertainty. Whether it can be located on the ground is a question of fact for a future trial.

The judgment is reversed, the verdict set aside, and a new trial awarded, and the case is remanded to the Circuit Court for such new trial.

ON RE-HEARING.

BRANNON, PRESIDENT :

Though since the filing of the above opinion upon a de-cision heretofore made in this case my mind has been open and receptive—indeed, inclined preferably to entertain rea-sons leading to a different conclusion upon the question, whether the burden rests on the plaintiff or defendant to lo-cate lands reserved from an inclusive grant—a re-consider-ration has brought my mind to the same conclusion as for-merly announced.

In addition to the authorities cited in the foregoing opin-ion, I quote from the syllabus and opinion in *Land-Grant Co. v. Dawson* (decided Feb. 5, 1894, by the Supreme Court of the United States) 14 Sup. Ct. 458. It is not based on any special law of the territory from which it was appeal-ed (New Mexico) but on general principles and, I think, furnishes strong support to the view expressed in the opin-ion above given. The syllabus contains sections as follows : —"The effect of an exception in a grant in respect to the thing excepted is as though it had never been included in the deed."—"Where there is an exception in the general granting clause of a deed, the party relying upon such gen-eral clause must in pleading state the general clause to-gether with the exception and must also show by the testimony, that he is not within the exception."—"To sustain an action of ejectment, it is necessary for the plaintiff to show that the land he seeks to recover is without the limits of the tract shown to have been conveyed away by himself."

I quote from the opinion by Mr. Justice Brown as fol-lows: "Under a deed from Maxwell and wife to the Max-well Land-Grant & Railway Company, and in all the sub-sequent deeds under which the plaintiff claims title, there was an exception of such tracts of land, 'part of the said estate, hereby warranted not to exceed in the aggregate fifteen thousand acres, which the parties of the first part have heretofore sold and conveyed,' *etc.*; and the question was whether the plaintiff was bound to show that the lands claimed by him in this suit had not theretofore been con-

veyed or whether the burden was on the defendant to show that they had been so conveyed. Ordinarily, the burden of proof is upon the party claiming the affirmative of the issue. There are, however, certain exceptions to this general rule. Bearing in mind that the burden was upon the plaintiff to show its title to the identical land claimed by the defendant, it is manifest that as the plaintiff did not take title to the fifteen thousand acres of the Maxwell land-grant, by reason of the fact that its grantors had already conveyed this amount of land, it was incumbent upon it to show that the land it sued to recover had not been previously conveyed, and hence that it had taken title to it under its deeds. An exception in a grant is said to withdraw from its operation some part or parcel of the thing granted, which, but for the exception, would have passed to the grantee under the general description. The effect, in such cases, in respect to the thing excepted, is as though it had never been included in the deed. If, for example, a person should convey to another a block of land, excepting therefrom a certain lot previously conveyed, to sustain ejectment for any particular lot it would be necessary for the plaintiff to show that it was not the lot which had been previously conveyed. There is a general rule, applicable both to conveyances and statutes, that where there is an exception in the general granting or enacting clause the party relying upon the general clause must, in pleading, state the general clause, together with the exception, and must also show that he is not within the exception." As to statutes, he cites *U. S. v. Cook*, 17 Wall. 168. A Virginia instance is *Hill's Case*, 5 Gratt. 682.

I do not say that it is necessary to negative the exception in the declaration. Justice Brown then refers to the case cited in the foregoing opinion as laying down the correct rule (*Madison v. Owens*, Litt. Sel. Cas. 281); also, the case of *Taylor v. Taylor*, 3 A. K. Marsh. 18, holding that "a plaintiff in ejectment claiming under a deed conveying the balance of a tract of land must show what the balance is, and where situate, or he can not recover;" also, *Guthrie v. Lewis*, 1 T. B. Mon. 142, holding that, "where the complainant derives title under a deed conveying the

whole tract patented, except parcels before conveyed to persons named, it is incumbent on him—not the defendant, who claims adversely to the patent—to show that the land in contest is not embraced in the exception."

It is warmly pressed in argument for the other view, that none of the cases cited in support of the proposition, that the plaintiff not the defendant must locate the land reserved, hold that the burden of doing so rests upon the plaintiff. Specifically and pointedly I confess they do not; but I assert, that deductively and logically they do. *Nichols* v. *Covey,* 4 Rand. (Va.) 365, and *Patrick* v. *Dryden,* 10 W. Va. 387, and *Bryant* v. *Willard,* 21 W. Va. 65, in decision direct assert the proposition, that in the case of an inclusive grant the grantee gets no title whatever to the reserved land. So do the cases of *Trotter* v. *Newton,* 30 Gratt. 583, and *Carter* v. *Hagan,* 75 Va. 557. Now, such a grantee does not take all the land included within the exterior boundaries of the inclusive survey, "subject, however, to the reservations in said patent contained," as asserted in *Hopkins* v. *Ward,* 6 Munf. 38—not by any means—but he takes no title whatever to those reserved lands ; not a shadow of title. Therein lies the weakness of the case of *Hopkins·* v. *Ward* and some North Carolina and Tennessee decisions cited.  We are bound to say this, because three decisions of authority binding us and highly persuasive authority from decisions of the United States Supreme Court and Kentucky say so.

Now, as these decisions tell us that the patentee under an inclusive patent gets not an iota of title to the land reserved in it, why does it not unavoidably follow, that a plaintiff in ejectment must show, just where those reserved lands are located, and thereby show that the defendant's claim is not within the reservation, but on his (the plaintiff's) land ? The plaintiff avers that the defendant is seated upon his land. The plaintiff must prove it. The plaintiff does not own the reserved land, but his title paper recognizes the existence of reserved land. How can he prove that the defendant is on his land without showing the location of the reserved land ? Two bodies can not occupy the same space at the same time. Either the re-

served land or the unreserved land occupies the point where the defendant has his cabin, not both. If the defendant is on the reserved land, no matter whether he is a squatter without shadow of title or has color of title, he is void of trespass or offence, against the plaintiff, since the plaintiff is a stranger to that reserved land—has no right to it—though the party that has title under the original reservation may have. A plaintiff in ejectment must recover on the strength of his title to the very land occupied by the defendant. He must show that the defendant is on his land. I care not what route it takes to prove this. Prove it he must. If it carries burdens with it, still prove it he must. If his title paper says he owns certain boundaries except certain land within those boundaries, he must separate the excepted land from his own, as he owns only the residue. The inclusive grant only grants a certain number of acres; that is, the number of acres left within its exterior boundary after excluding the reserved lands. The grantee is entitled to no more. He took the grant with the reservation, and he assumed to set apart his land whenever called on. Shall he ever be allowed to say, "I own all this boundary until you locate the reservation?" Thus he would get more land, perhaps twice or thrice the quantity, intended to be granted. When he took his grant there were thousands of acres in entries *in fieri*, which afterwards lapsed to the state, yet he claims all.

We are cited to the case of *McCormick* v. *Monroe*, 1 Jones (N. C.) 13, holding that, "where there is an exception in a grant, the *onus* of proof lies upon the party who would take advantage of that exception." This is neither good logic nor good law. The state or an individual—for there is no difference—grants at one date a certain one hundred acres to A., and afterwrrds grants a certain large boundary, including said one hundred acres, to B., reserving the one hundred acres granted to A. B. sues A. in ejectment, claiming that he occupies some of his land. Is it possible that A., who is prior in date of grant and does not claim under the exception but by force of his prior grant, and who is expressly saved and defended by the letter of the reservation, must show the reserved boundary, and that he

is within the reservation ? I think not. B., when he took his grant, agreed not to molest A., and he must find A's lines in order to perform his agreement. So with the case of a general reservation of so many acres reserved, though the parties, in whose favor the reservation is are not named, be they who they may, there is that reservation, and they are protected, because they are prior in time, and it "is nominated in the bond" that they shall be protected. The grantee took the grant agreeing to look them up. Records tell him what they are, and, as Chief Justice Marshall said in *Greenleaf* v. *Birth*, 6 Pet. 302, "The fact, on which the exception depends, is within the knowledge of the plaintiff and not of the defendant." He ought best to know his own bounds, and the exceptions.

I am of opinion that, to entitle a plaintiff in ejectment to recover upon an inclusive survey, he must locate not merely the exterior bounds of the grant, but also the specific reservation, and as to the general reservation he must show some prior claim or claims equal in quantity to such general reservation, excluding defendant's land; for if he shows the defendant's land within the reserved land, he shows himself out of court. This would make a *prima facie* case for recovery. If the defendant wishes to dispute such location of prior claims, the burden would be on him to prove that he is within a reservation.

DENT, JUDGE:

Plaintiffs claim under an inclusive grant, which contains within its exterior boundaries nineteen thousand and five hundred acres granted to John Steele, and nine thousand and sixty five acres excepted in favor of parties, to whom the state was obligated to make or had made prior grants. They demand the land in controversy as a part of the nineteen thousand and five hundred acres; and they insist they have made a *prima facie* case, when they have shown, that the land in controversy is either a part of the nineteen thousand and five hundred acres or a part of the nine thousand and sixty five acres, and that it then devolves

on the defendant to show, that such land is a part of the nine thousand and sixty five acres. This is not making a *prima facie* case that the land in controversy is a part of the nineteen thousand and five hundred acres, because it it is just as *prima facie* that it is a part of the nine thousand and sixty five acres, as they are each equally as well described in the grant.

There are two ways in which the plaintiffs may make a *prima facie* case: (1) By showing alleged boundaries inclusive of the land in controversy and limited under the grant to nineteen thousand and five hundred acres. This would be proving their right to recover affirmatively. (2) By showing the exterior boundaries of the whole tract and exceptions thereto sufficient in quantity and location to cover the nine thousand · and sixty five acres of excepted land exclusive of the land in controversy. The latter is an indirect or negative method of proof accorded plaintiffs for the reason that the affirmative method is not always possible ; and if the exterior boundaries include more than the sum of the grant and exceptions, to wit, nineteen thousand and five hundred plus nine thousand and sixty five, equaling twenty eight thousand five hundred and sixty five acres, the plaintiffs would have the benefit of the excess, however much it might be instead of the defendants, and would not be held down to the actual number of acres granted, to wit: nineteen thousand and five hundred but hold the the whole boundary subject only to the exceptions, as said in *Hopkins* v. *Ward,* 6 Munf. 39, and get no title whatever to the exceptions as held in *Nichols* v. *Covey,* 4 Rand. (Va.) 365. · Having no title to the nine thousand and sixty five acres of exceptions, plaintiffs must show, that they are excluded from their demand. Otherwise on a demurrer to evidence everything proven by the plaintiffs and all just inferences therefrom may be true, and yet plaintiffs have no title to the land in controversy or right to recover the same. The plaintiffs' evidence, proving with as much certainty that the land in controversy is a part of nine thousand and sixty five acres as of the nineteen thousand and five hundred acres, fails to preponderate in their favor, and no judgment could be rendered as a legal conclusion from the law and facts.

Under the rule as laid down in *Hopkins* v. *Ward*, to wit: that the grantee in an inclusive grant is entitled to recover all the land within its boundaries except such as a prior claimant should show himself entitled to under the reservations, to make out a *prima facie* case, all the plaintiffs would have to do would be to show the exterior boundaries of their inclusive grant; but the same court completely annulled this rule in *Nichols* v. *Covey*, when it held, that the inclusive grant did not pass to the patentee title to the excepted prior claims, but that the title to the same remained in the commonwealth subject only to the rights of the prior claimant, and a forfeiture of these rights inured to the benefit of the commonwealth and not to the inclusive grantee. These two decisions containing a manifest contradiction, this Court must follow the one which states the law correctly. As to this there can be no doubt. I therefore concur in the opinion of JUDGE BRANNON.

ENGLISH, JUDGE, dissenting.