# CHARLESTON.

ROCK HOUSE FORK LAND COMPANY v. GRAY *et als.*

Submitted January 6, 1914.   Decided January 14, 1914.

1. PUBLIC LANDS—*Inclusive Grant—Location of Lands—Burden of Proof.*

Where there are specific reservations, and also general reservations, in an inclusive grant, if plaintiff would recover thereon he must locate the specific reservations, and also prior claim or claims in quantity sufficient to equal the general reservations, excluding defendant's land, after which the burden is on defendant to show that his land is within the reservation of the grant.   (p. 504).

2. SAME—*Inclusive Grant—Location of Lands.*

In locating such inclusive entries, surveys or grants, if one or more of such entries contains a general indefinite description, susceptible of an interpretation which would include a much larger acreage than that called for, and land preferred in a subsequent survey or grant, but by the survey thereof and as interpreted by the surveyor the land in controversy is not so included, plaintiff, in so locating the preferred lands in such inclusive survey or grant, is not bound by the general indefinite description in such prior entry or entries, but satisfies said rule of evidence by locating such preferred lands according to the survey thereof.   (p. 507).

3. SAME—*Inclusive Grant—Construction—Location of Lands.*

Though the reservation in the grant of such inclusive survey is general in terms, and not specific of the preferred lands, nevertheless if the grant refers to the survey, and the survey on which the grant is based contains specific and also general reservations, the survey will be treated as a part of the grant, including the special as well as the general reservations, and the grant construed accordingly.   (p. 507).

4. EJECTMENT—*Inclusive Grant—Proof of Location.*

Plaintiff in an action to recover lands claimed under such inclusive grant must fail on demurrer to his evidence, if he omits to locate any one or more of such preferred entries or surveys, or any other lands excepted in other deeds or grants under which he claims title to the land sued for.   (p. 507).

5. SAME—*Inclusive Grant—Burden of Proof.*

Where a deed after describing by exterior boundaries the larger tract, and as a further description of the land granted, says, "containing by actual survey and estimate twelve thousand six hundred and twenty-five (12,625) acres, *exclusive* of all prior sales and grants, and *also excepting* the portion of Archie B. Stover Im-

provement that lies within these bounds, according to the survey made by John McVey, surveyor'', all such ''prior sales and grants'' will be construed as exceptions, to be located and proved as well as such ''Stover Improvement'', and omission to do so by plaintiff claiming under such inclusive deed, and suing to recover lands embraced therein, will on demurrer to his evidence be defeated in his action. Distinguishing *Rowland Land Co.* v. *Barrett,* 70 W. Va. 703. (p. 509).

6. JUDGMENT—*Parties—Trespass.*
    A decree in equity perpetuating an injunction against defendant from trespass and the cutting of timber on land is not binding on a co-tenant or tenant in common, not a party, and against whom no allegation is made in the bill. (p. 510).

7. ADVERSE POSSESSION—*Inclusive Grant—Proof of Location.*
    Where plaintiff claims under such inclusive grants or deeds, and fails to so locate the preferred or excepted lands, proof of possession of a small tract within the exterior boundaries of the larger tract by one claming under an executory contract from a previous owner or claimant of such large tract, will not, within the rule of *Core* v. *Faupel,* 24 W. Va. 238, and *State* v. *Harman,* 57 W. Va. 447, aid plaintiff's title, or excuse his omission to locate the tracts excepted or reserved in the grants and deeds under which he claims. (p. 511).

Error to Circuit Court, Raleigh County.

Action by the Rock House Fork Land Company against Giles T. Gray and others. Judgment for plaintiff, and defendants bring error.

*Reversed and Entered.*

*J. Q. Hutchinson, Farley & Ward,* and *McGinnis & Hatcher,* for plaintiffs in error.

*File & File,* for defendant in error.

MILLER, JUDGE:

In ejectment, on demurrer by defendants to plaintiff's evidence, and a conditional verdict of the jury, the court below gave judgment for plaintiff, and that it recover of defendants possession of the 34.7 acres of land sued for. A writ of error to that judgment was awarded here on the petition of the defendant John W. Gray.

On the trial plaintiff undertook to deraign title down through many mesne grants and conveyances, beginning with

a grant to DeWitt Clinton, dated February 17, 1796, for 130,000 acres, excepting 126,000 acres of prior claims, which, as the grant recites, having preference by law to the warrants and rights upon which that grant was founded, liberty was thereby reserved to carry them into grant or grants.

This grant refers for its foundation to the survey for Austin Nichols, and some of the questions here presented are the same dealt with in the recent case of *William James' Sons Co. v. Crouch,* 73 W. Va. —, 79 S. E. 815, 817.

The entries and survey on which this Clinton grant was founded are dated respectively, the first entry, for 90,000 acres, March 28, 1795; the second entry, for 40,000 acres, April 28, 1795; the survey, May 28, 1795. This survey, after describing the exterior boundaries the same as in the grant, contains this provision or memorandum: "An allowance of 126,000 acres is made with the calculation of the area of this plat for prior claims entries within the boundary thereof a part of which is 31,356 acres entered for Andrew Reid and John Stuart the 1st day of Nov. 1794 also 9730 acres entered for Thomas Edgar the 4th of March 1795, also 5000 acres entered for Andrew Reid the 20th of March 1795, also 2,000 acres entered in two entries for Wm. Runnick, Wm. Morris, and Robert James November 14, 1794."

With reference to entries, surveys and grants introduced in evidence and the aid of the oral testimony of surveyors, and other witnesses, plaintiff undertook to locate within the exterior boundaries of the Clinton grant as the prior or excepted claims referred to therein various tracts in all aggregating 146,321½ acres, among them a Thomas Edgar tract (overlap) of 6,764½ acres, a Runnick, Morris and James tract of 1,500 acres, and an Andrew Reid tract of 5,000 acres. These three tracts, as will be observed, are of those referred to in the survey for Austin Nichols, on which the Clinton grant rests.

Plaintiff did not undertake to locate the 31,356 acre entry of Reid and Stuart, nor one of the entries supposedly for 500 acres, of Runnick, Morris and James, referred to in said survey. It is insisted by defendants that plaintiff was bound to so locate this and all excepted boundaries as a condition

of recovery, and failure to do so is the first ground assigned for reversal, relying on *Stockton* v. *Morris,* 39 W. Va. 432.

To this proposition it is replied that as the exception in the Clinton grant is general, not specific, of 126,000 acres, plaintiff sufficiently complied with the rule of *Stockton* v. *Morris,* by locating within the exterior boundaries of that grant prior entries and grants exceeding in the aggregate the acreage preferred. The rule of *Stockton* v. *Morris, supra,* is that where there are specific reservations and general reservations in an inclusive grant, if he would recover thereon plaintiff must locate the specific reservations, if any, and also prior claim or claims in quantity sufficient to equal the general reservations, excluding the land of defendant, after which the burden is on defendant to show that his land is within the reservations of the grant.

At the close of plaintiff's evidence and before demurring thereto defendants introduced, as the only evidence on their behalf, a certified copy of the entry by Reid and Stuart of November 1, 1794, for 31,356½ acres, and then proved by one of the surveyors that the land in controversy would fall within the boundaries of the general description given in that entry.

But plaintiff had already proved that this entry and that of 5,000 acres of March 20th, 1795, made by Andrew Reid, both referred to in the survey covered by the Clinton grant, had not been carried into completed survey until April 27, 1796, and then as combined acreage of 36,356½ acres, and as so surveyed and subsequently carried into the grant to Andrew Reid the survey did not cover any of the land in controversy. And it is claimed by plaintiff's counsel in argument, that in so far as the entry of 31,356½ acres as covered by the subsequently combined survey lies within the exterior boundaries of the Clinton survey and grant, it would have the right to add that acreage, if need be, to the aggregate acreage proved by it, as one of the preferred tracts in the Clinton grant. We think plaintiff would have that right to the extent that the boundaries are defined and as to any portion of the land entered situated within the inclusive survey relied on.

We are also of opinion that as this survey specifically excepts this and certain other boundaries, and is referred to in

the grant, though, as held in *William James' Sons Co.* v. *Crouch,* the exception in the grant is general, plaintiff, when the survey is produced, would be required to locate the specifically excepted boundaries in the survey, and then as required by the rule of *Stockton* v. *Morris, supra,* locate enough other lands, preferred in survey and grant, to make up the aggregate of acreage preferred.    This seems plain.

But how will the application of this rule to the case at bar help defendants' position?    *William James' Sons Co.* v. *Crouch,* and authorities cited therein, hold, with reference to the two entries making up the 36,356½ acre survey, that their descriptions, according to the evidence of the surveyors, were susceptible of an interpretation that would include three times the quantity of land called for, and for that reason might be void for uncertainty, under *Harper & Weston* v. *Baugh,* 9 Grat. 508.    And according to the uncontradicted evidence these entries as so interpreted and surveyed preliminary to the grant to Reid, on March 27, 1797, though within the exterior boundaries of the Clinton grant do not include the land in controversy.    We are, therefore, of opinion that plaintiff having so located these two entries as surveyed and granted is not affected by the evidence of the original entry, and that it might include in its general description the land sued for, and that it has the right to have added to the total acreage of preferred lands the acreage covered by the survey and grant to Reid.

The next point made is that though it located within the Clinton boundary the 1,500 acre entry of Runnick, Morris and James, plaintiff wholly failed to locate the other entry of 500 acres, the residue of the 2,000 acres preferred in the Austin Nichols survey, and that plaintiff must fail for this reason.    Relying on *William James' Sons Co.* v. *Crouch, supra,* plaintiff's counsel reply, that as the exception in the Clinton grant is general, not specific, it has satisfied the rule of *Stockton* v. *Morris,* by showing inclusive entries, surveys and grants aggregating more than the preferred boundaries, and that it was not bound to locate the 500 acre Runnick, Morris and James entry specifically preferred in the survey. In the *William James' Sons Co.* v. *Crouch* case the Austin Nichols survey, though referred to in the grant, was not pro-

duced or put in evidence, and the exception in the grant so disconnected from the survey was construed. as general and not specific.   But in this case the survey was put in evidence by plaintiff itself, and it, the basis or foundation for the grant, contains the specific exceptions.   The general rule is that a plat or survey or other writing referred to in another deed or grant as descriptive of the thing granted, or for the purpose of any limitation or reservation, becomes as much a part of such deed or grant quoad that purpose as if incorporated therein and should be read in connection therewith.   Hutchinson on Land Titles, sections 517, 518; *Snooks* v. *Wingfield,* 52 W. Va. 441, 445; 2 Devlin on Deeds, (3rd Ed.) section 1020.   In this case the grant makes two references to the survey, the first in the premises, the other in the excepting clause.   When that survey is read into the grant, as we think it must be, we have exactly the kind of a case presented in *Stockton* v. *Morris,* a grant containing specific and also general reservations, and one for the application of the same rules, including the rule requiring the location of the specifically excepted lands.   Plaintiff having failed to locate the 500 acres of the Runnick, Morris and James entry, one of those specifically excepted, must fail on defendants' demurrer to the evidence, for how can we say that the land sued for was not a part of the land excepted in that grant?   We can not do so.   And until that exception was located defendants had not the burden cast upon them of showing that the land in controversy was within the excepted boundary.   In *Mills* v. *Edgell,* 69 W. Va. 421, 424, we decided, in a case presenting facts similar to this case, that: "A plaintiff in ejectment, claiming title under a deed which excepts certain parcels of land out of the tract therein described, and seeking recovery of only a small part of such boundary, must identify the land in controversy as his by proving it to be within the lines of the tract granted, subject to exceptions, and outside of the excepted parcels."

In this connection we are disposed to hold, and for the same reason, that plaintiff must fail for its failure to also locate the 300 acres, which we think constituted an exception in the deed from Samuel Stocking and wife to Francis Granger, of November 30, 1848.   Reference in this deed to this tract

previously granted is more than a mere recital of an outstanding title.  It must be read in connection with the provision in the granting clause, which, in defining what is intended to be granted, says, that the purpose of the grantors is to grant what had not theretofore been granted.  As the Bailey tract had been previously granted, it was not by the deed conveyed and constituted an exception to the grant, and the case falls clearly within the rule respecting excepted boundaries. The rule of *Wilson* v. *Braden,* 48 W. Va. 196; *Parkersburg Industrial Co.* v. *Schultz,* 43 W. Va. 470; and *Maxwell* v. *Cunningham,* 50 W. Va. 298, respecting proof by defendant of outstanding titles, relied on by plaintiff, can, therefore, have no application.

The same rule must be applied also to the deed from Winthrop and others to Bond, of January 5th, 1888.  This grant, in its description of the land conveyed, covers the exterior boundaries of a larger tract, but as descriptive of the land actually conveyed, says "containing by actual survey and estimate twelve thousand six hundred and twenty-five (12,625) acres, *exclusive* of all prior sales and grants, and *also excepting* the portion of the Archie B. Stover Improvement that lies within these bounds, according to the survey made by John McVey, surveyor."  Plaintiff did locate the Stover tract; why was it not also required to locate all prior sales and grants?  They were exceptions from the grant as by the very language of the deed the Stover "Improvement" was "also" an exception.  The clause in the habendums of the deeds of the commissioner of school lands, involved in *Rowland Land Co.* v. *Barrett,* 70 W. Va. 703, 75 S. E. 57, relied on by plaintiff, was "Subject, however, to the rights of occupant claimants according to the provisions of the several acts of the assembly relating thereto."  This clause, as was there held, is not an exception; but a conveyance subject to the prior rights of claimants, distinguishing that case from this, and from *Stockton* v. *Morris, supra.*

Another point made for reversal is that the three Rutter and Etting patents, one for 4,160 acres, another for overlap of 62,000 acres, and the third for an overlap of 10,956 acres, previously granted, but surveyed but a few days subsequent to the date of the Austin Nichols survey, and aggregating

77,116 acres proved as lying within the survey and grant to
Clinton, cannot be relied on as boundaries excepted, or in
making up the aggregate of preferred lands, as was permitted
on the trial below.  The grants for the lands refer to the
surveys, but not to any previous entries thereof, as possibly
antedating the surveys, and as made and existing prior to
the date of the Austin Nichols survey.  It seems to be conced-
ed by both sides that if the warrants were issued for military
services no entries were required.  Nevertheless may entries
not have been made, on which these surveys were made?  It
is furthermore contended by plaintiff's counsel, that as these
surveys and the Austin Nichols survey were so nearly related
in time, and that both must have been in progress at one and
the same time, and as the grants for the former preceded the
grant to Clinton, and the warrants therefor antedate the
warrants and entries on which the Nichols survey was made,
they must have been intended as a part of the excepted lands.
As it is not necessary to the disposition of this case that we
should pass upon these questions we are disposed to leave them
open for decision when the necessity therefor may be here-
after presented.  Unless these Rutter and Etting lands are
included plaintiff failed to prove inclusive boundaries aggre-
gating the 126,000 acres preferred.  Other questions present-
ed in reference to plaintiff's title papers which may or may
not have merit are likewise passed as not essential to the
decision of this case.

But plaintiff relies on proof of a prior adjudication against
John Hawley, one of the defendants; also possession.  The
adjudication relied on is a decree of the circuit court of
Raleigh County, pronounced August 10, 1907, in a suit of the
*White Stick Coal Co.* v. *Hawley,* at a special term thereof
called by the regular judge, the record whereof was introduc-
ed by plaintiff as part of its chain of title, perpetuating a
prior injunction and restraining Hawley, his agents and em-
ployees from cutting, destroying and removing the trees and
timber from the tract of land described in the bill and here
sued for, and from removing the timber and saw logs there-
from, as set forth in the bill.  This decree was upon default,
on bill taken for confessed; but there was no decree otherwise
adjudicating title, nor was there any award of process for

possession. That bill alleged ownership and possession in plaintiff, and trespass and insolvency of defendant. Plaintiff in this suit derived title to the land sued for immediately from the Beaver Coal Co., which had previously obtained a deed from the White Stick Coal Co., plaintiff in that suit. According to deeds introduced by plaintiff defendant Hawley had not acquired title or claim of title to the land, or any part of it, until July 9th, 1907, after the suit and just before the decree in August following, and then by deed from John W. Gray and Emma, his wife, for only an undivided half interest therein. Neither Gray, defendant here, nor his wife, were defendants to that suit. Not having been a defendant, whatever the effect of that decree, as an adjudication, it could not bind Gray, plaintiff in error here. The bill contained no allegation respecting Gray nor his title, and this is another reason why he would not be bound by that decree. 6 Ency. Dig. Va. & W. Va. Rep. 291. If, as held in *Bensimer* v. *Fell*, 35 W. Va. 15, 12 S. E. 1078, a grantee is not affected by a judgment against his grantor after conveyance, though privy in estate, how can it be said that a grantor is bound by a decree against his vendee, after conveyance, in a suit to which he was not a party, and as to whom no allegation was made, and as to land or interest in land not conveyed? A judgment binds only parties and privies, not strangers to it. *Smith* v. *White*, 63 W. Va. 472. And though co-heirs or co-tenants, as a general rule, a judgment against one of them will not bind the others not parties. *Chapman* v. *Chapman*, 1 Munf. 398.

It is insisted by defendants' counsel, moreover, that the court was without jurisdiction in equity to pronounce the decree against Hawley, under the rule of *Freer* v. *Davis*, 52 W. Va. 1, and that for this reason also the decree is not binding on Hawley. If Hawley had appeared in that case and set up adverse title the court would, under the rule in that case, have been without jurisdiction perhaps to try title or adjudicate the legal rights of the parties.

Lastly, as to the question of possession relied on by the plaintiff in error. That possession is the alleged possession of one James M. Bailey, of a tract of 75 acres, purchased from Alfred Beckley, attorney in fact for the Grangers, in 1876. It is claimed that this tract and a tract of 52 acres, purchased

by Bailey from McCreery, commissioner, November 18, 1873, and the tract in controversy in this suit, are all within the boundaries of the 12,625 acre tract, covered by the deed from Winthrop to Bond, above referred to, and that as Bailey took possession under said contract, without deed, of the 75 acre tract, having a common corner with the 52 acre tract and with the tract in controversy, his possession was that of the Grangers under whom plaintiff claims, which possession, from 1876, when he purchased the 75 acres, until the year 1901, ripened that possession into good title in the Grangers, predecessor of the plaintiff, upon the principles declared in *Core* v. *Faupel,* 24 W. Va. 238, *State* v. *Harman,* 57 W. Va. 447, *Moore* v. *Douglass,* 14 W. Va. 708, and *Duff* v. *Good,* 24 W. Va. 682. But this theory of title by possession assumes that the 75 acre tract, as well as the 52 acre tract and the tract in controversy, were in fact within the boundary of the 12,625 acre tract, and that the numerous sales of smaller tracts by the Grangers and the Bonds, and deeds therefor, had not so disconnected the 75 acre tract as to cut it entirely off from the remaining contiguous lands of the larger tract as to sever the possession of the three tracts; and also that these smaller tracts and particularly the tract in controversy were not parts of some one of the numerous tracts preferred out of the Clinton survey, which the plaintiff failed to locate, or within some of the boundaries excepted in the subsequent deeds to which we have referred. As we have already concluded plaintiff must fail here for its omission to locate the 500 acre entry of Runnick, Morris and James, and other lands excepted in subsequent conveyances, we cannot say that the 75 acres, or the 52 acres, of the 34.7 acres in controversy, constituted any part of plaintiff's lands. If plaintiff had good title by the Clinton grant and subsequent deeds, its title would prevail over that of defendants without reference to Bailey's possession. Without good title under that grant no possession of Bailey of the 75 acres, however long continued, would give plaintiff good title to the land in controversy.

For the foregoing reasons we are of opinion to reverse the judgment below and to enter such judgment here as the circuit court should have entered, adjudging the law on the demurrer to be for the defendants, sustaining the demurrer, and that

plaintiff take nothing by its action, and that defendants recover their costs in the circuit court, and that the plaintiff in error, John W. Gray, recover of the defendant in error, Rock House Fork Land Company, his cost about the prosecution of his writ of error in this court, in this behalf expended.

*Reversed and Entered.*