## DETERMINED BY THE

# SUPREME COURT OF APPEALS

### OF

# WEST VIRGINIA

---

## CHARLESTON.

UNION TRUST & DEPOSIT COMPANY *v.* PAULHAMUS *et al.*

Submitted January 20, 1914.   Decided March 31, 1914.

1. TRIAL—*Cutting Timber—Action for Damages—Instructions.*

In an action to recover damages for timber alleged to have been wrongfully taken from plaintiff's land, his title being junior to that under which defendants claim, he relying mainly on color of title and adverse possession, an instruction based on the theory of title so acquired, after July 18, 1890, the date of plaintiff's deed, and prior to the date of his suit, and which told the jury that if they so found, and further found that defendants about 1901, 1902 and 1903, before the institution of the suit, cut, removed or destroyed the timber on said land, plaintiff was entitled to recover the value thereof with interest from the time the same was cut to date, does not constitute reversible error as implying right of such recovery if plaintiff's title had only matured by adverse possession at the date of the suit and not at the time when the timber was so taken, the evidence tending to show and from which the jury could have found title matured at the time the timber is assumed to have been cut and taken from the land.   (p. 2).

2. RULINGS ON EVIDENCE.

A case in which on familiar principles no error is found in the ruling of the trial court on the admission and rejection of certain testimony offered on the trial.   (p. 4).

3. LANDLORD AND TENANT—*Estoppel to Deny Title—Extent.*

A tenant is not estopped to deny his landlord's title to land not covered by his lease, nor to any greater interest therein than is necessary to support his lease, nor to land of which he has not taken possession under such lease.   (p. 4).

4. ADVERSE POSSESSION—*Boundaries—Logs and Logging—Trial—Instructions—Cutting Timber—Acquisition of Title—Action for Damages—Burden of Proof.*

Certain instructions to the jury given and refused, involving no new principles, examined and passed upon for the purposes of the new trial awarded by the court below. (p. 6).

Error to Circuit Court, Braxton County.

Action by the Union Trust & Deposit Company, executor, etc., against John Paulhamus and others. Judgment for defendants, and plaintiff brings error.

*Affirmed.*

*Haymond & Fox,* for plaintiff in error.

*Hall Bros.,* for defendants in error.

MILLER, PRESIDENT:

On the trial below plaintiff obtained a verdict for $1,323.49, by way of damages for timber alleged to have been cut and taken by defendants from decedent's lands, which verdict was on defendants' motion, set aside and a new trial awarded them. To review that judgment the present writ of error was awarded by this court.

Numerous grounds of their motion were assigned by defendants, but it does not distinctly appear whether the judgment below was based on all or only some particular ground assigned. Counsel for plaintiff in error say in their brief that the reason assigned was that the court had misdirected the jury by plaintiff's instruction number one, given, and their entire argument is devoted to that question. On the other hand counsel for defendants rely on all the grounds assigned in support of said judgment, and have presented a very elaborate brief thereon, and we have not been furnished any reply thereto. Of course if the judgment below may be sustained on any of the grounds assigned it must be affirmed.

Plaintiff's instruction number one was based on the theory of title acquired by Camden by adverse possession, after July 18, 1890, the date of his deed from Hyer and others, and before the institution of this suit, and the jury were told that if they found Camden had such adverse possession, and they further found from the evidence "that the defendants about

74 W. Va.

1901, 1902 and 1903, before the institution of this suit, cut, removed or destroyed, or caused to be cut and removed or destroyed, the timber on said 200 acres of land, then plaintiff is entitled to recover in this action the value of all such timber so by them cut or caused to be cut thereon, with interest from the time the same was cut, to this date." It is contended by defendants' counsel that this instruction warranted a verdict for plaintiff, if the jury should find Camden acquired good title to the land by adverse possession at any time prior to the institution of the suit, and was misleading and erroneous, in not limiting that right to such timber as may have been cut and taken subsequently to the date when he may have matured his title by such adverse possession; that defendants would not be liable for any timber cut and taken prior to the time when Camden's adverse possession ripened into good title. But we do not think the instruction amenable to this construction. It assumes that the timber sued for was cut and taken from the land in the years 1901, 1902 and 1903, and the evidence tended to show this fact; if so, and this evidence also tended to show adverse possession by Camden beginning shortly after the date of his deed, July 18, 1890, the jury could have found he had acquired good title to the land prior to the alleged cutting and taking of the timber by defendants.

But if there could be any doubt about this instruction, instructions numbered six and seven, given for defendants, specifically limited plaintiff's right of recovery to such timber as Camden owned or had title to at the time it was so cut and taken from the land. While it is true instruction number one complained of told the jury Camden might acquire good title to the 200 acres by adverse possession for ten years prior to the date of the suit, the court did not intend to tell the jury by what followed, as above quoted, that they could find for plaintiff the value of timber taken therefrom prior to the date of the suit, but only for the timber cut and taken from the land about 1901, 1902, and 1903, at which time the jury could have found Camden's title had become absolute by such adverse possession. While this instruction could and should have been made plainer, we do not think that in connection with the other instructions, including said instructions num-

bered six and seven, the jury could have been misled, justifying the setting aside of the verdict.

Such being our conclusion as to plaintiff's instruction number one, it becomes necessary for us to inquire whether the judgment below on the verdict is sustainable on other grounds covered by the motion.

First, as to the admission and rejection of evidence. (1) Contrary to counsel's assumption the court below sustained objections to questions propounded to the witness Corley as to whether those remaining on the land after the lease to Paulhamus & Son, of December 3, 1902, remained there as tenants of Camden. So there is nothing in this point. (2) We see no material error in the evidence of the witness Cogar as to the directions his father, as agent of the Brockerhoffs, gave Wayne about cutting timber over the line on the 200 acre tract. True he may not have been the agent of the Brockerhoffs to locate boundaries, but he was agent to look after the Brockerhoff lands, prevent trespass thereon, and was it not also reasonably within his duty to see that neither the Brockerhoffs nor those claiming timber rights under them committed trespass on the lands of others? (3) It was not error to admit proof by plaintiff of assessment and payment of taxes on the 200 acres in the name of Robert G. Perrine, for the years 1870 to 1878. True the title did not appear to be in him for those years, but for some unexplained reason it was transferred to him on the land books in 1870, from Andrew Perrine, at the same time that three other tracts were transferred to him, being the tracts conveyed by the latter to the former by deed in 1868, which deed recites the said 200 acre tract as then owned by the grantor; moreover, the deed from Robert G. to Andrew Perrine, of March 1, 1878, purports to reconvey to him not only the three tracts previously conveyed by him to the former, but also the 200 acre tract which had been so assessed to Robert G. from 1870 to 1878, inclusive. We think it very evident from these transactions that it was the intent of Andrew in 1868 to convey to Robert G. along with the other tracts the 200 acres in controversy, and this being so, the assessment thereof to him, and payment of taxes for all those years, saved the land from forfeiture for non entry and payment of taxes in the name of Andrew Perrine.

This proposition we think supported by the principles of
*State* v. *Allen,* 65 W. Va. 335. (4) And for the purpose of
showing the relation of the parties to this land, and the assess-
ment and payment of taxes, we see no error in permitting
plaintiff to introduce in evidence said deed from Andrew to
Robert G. Perrine. (5) We see no substantial error in the
ruling of the court denying defendant's offer to prove by the
witness Paulhamus the circumstances under which Paulhamus
& Son were induced to enter into the contract with Corley,
agent for Camden, of December, 1902, permitting operation
by them of their tram road previously built across the 200
acre tract, namely, that at the time they were preparing to
take an appeal to this court from a judgment against them in
favor of Camden, subsequently reversed by this court, and
upon which judgment execution had been issued and was then
in the hands of the sheriff, and who with Camden, had gone
upon the land and destroyed or partially destroyed said tram
road, and that they might not be interrupted in their timber
operation on adjoining lands pending said appeal. These
circumstances, it is claimed, would have shown said contract,
relied on by plaintiff as estopping defendants to deny plain-
tiff's title to the timber taken, was executed under duress,
and that they were in no way estopped thereby. The legal
proposition relied on, namely, that where a tenant has been
made to take a lease by threats of violent expulsion from the
land, or by any force, fraud or illegal behaviour on the part of
the lessor, the tenant is not estopped to deny the landlord's
title. This proposition seems to be well supported by author-
ity. 2 Taylor on Landlord and Tenant, (9th ed.) section 707;
citing among other cases *Johnson* v. *Chely,* 43 Cal. 300. But
we do not think the proposition applicable to the case pro-
posed by the offer. Camden had the right to execution on his
judgment, and to have it enforced, unless suspended or super-
seded. The law provides for both, by suspension by the circuit
court, and supersedeas here. Therefore no unlawful force was
exerted, nor was any fraud or illegal behaviour on the part
of Camden or Corley proposed to be shown. But whether
defendants were estopped by the contract is another question,
to be considered hereafter, and presented by instructions given
on behalf of plaintiff.

Second, as to the instructions. Instruction number two, given for plaintiff, raised directly, and defendants' instructions numbered four, six, seven and nine, as modified and given over defendants' objection, presented incidentally the question of estoppel by the tram road contract of December, 1902. Our opinion is that neither the West Branch Lumber Company nor Paulhamus & Son were estopped by that contract to deny the alleged title of Camden to the 200 acres; first, because the West Branch Lumber Company was not a party to that contract and was not let into possession under it; and second, because the contract did not relate to anything but a right of way for the tram road—did not purport to be a lease of the land outside of the right of way and on which the timber was cut. In such cases the estoppel does not extend to other land of the lessor not included in the demise, nor to any greater estate in the land than is necessary to support the tenant's lease, nor to land of which the tenant has not taken possession under the lease. 2 Taylor on Landlord and Tenant, section 707; *Davis* v. *Williams,* (Ala.) 89 Am. St. Rep. 55, note p. 75; *Johnson* v. *Chely,* 43 Cal. 299, 305; *State* v. *Boyce,* 109 N. C. 739; *Jochen* v. *Tibbells,* 50 Mich. 33; *Lockwood* v. *Carter Oil Co.,* 73 W. Va. 175, 80 S. E. 814. For these reasons we think plaintiff's instruction number two was erroneous, and that in so far as defendants' instructions numbered four, six and seven, as modified, imply an estoppel on defendants by that contract, they were erroneously so modified, otherwise we think the modifications were proper.

As the erroneous rulings of the court already disposed of are sufficient to support the judgment below awarding defendants a new trial, and as the other ruling complained of in instructions given, refused or modified present no new or novel principles we will do no more than indicate an opinion thereon for the purposes of the new trial.

Plaintiff's instructions. Number three, on the question of possession by defendants by mistake of a part of the 200 acres, is bad in excluding the question of intent to hold adversely. Number four, on the question of the burden of proof, is bad. The burden was not on defendants in the first instance to locate and prove title to the 200 acres. Plaintiff had the burden of showing title in Camden to the timber, or land on

which the timber was cut.  If plaintiff was claiming under an inclusive grant, and had located the exterior boundaries of excepted tracts, or quantity of acres of a general exception, the burden would then have been on defendants to show that the land or timber claimed was within some excepted boundary.  But the record does not seem to present such a case as to throw such burden on defendants.  *Rock House Fork Land Co.* v. *Gray,* 73 W. Va. 503, 80 S. E. 821.  Instructions numbered six and eight, the latter based on the evidence of the witness Hosey, are good, and properly given.  Number seven is bad.  The mere act of surveying the Albright land and knowingly and intentionally excluding therefrom the 200 acre tract claimed by defendants was not necessarily an act in recognition of plaintiff's title to the 200 acres or want of title in themselves.  That fact was proper evidence no doubt to go to the jury on the question of defendants' claim to the 200 acre tract, but the bare fact of the survey and exclusion of the 200 acres was not conclusive on the question of recognition of plaintiff's title.  Number nine is good, on plaintiff's theory that defendants' older grants and deeds do not cover the 200 acres, and that no title had been acquired by them by adverse possession.  If that is so, or if the 200 acre Perrine grant was all or partly made up of the lands excepted from the deed from Haymond, Commissioner, to Camden, of 1842, it would not be true as the instruction proposed that the Perrine grant was invalid at its date.  Some of the excepted lands may have become reinvested in the State.  The facts do not appear, and the instruction would have been misleading.  It is said Camden is concluded by the decree in *State* v. *West Branch Lumber Co.,* 64 W. Va. 673.  How do we judicially know this? We do not know, by pleadings or proofs, that Camden was a party to that suit.  That decree is not pleaded, nor the record put in evidence, and we cannot look to either on the issues here presented.  Number ten, we think, is misleading; it too clearly implies that plaintiff was owner of the land or timber taken, a fact for the jury.

Lastly, as to defendants' instructions numbered five, eight, sixteen and seventeen, rejected.  Number five, was bad, for one reason, because there is no evidence that the 200 acres is not within some one of the excepted boundaries in the deed from

Haymond, Commissioner, to G. D. Camden.   We find no evidence locating or attempting to locate any of these excluded or excepted boundaries.  *Rock House Fork Land Co.* v. *Gray*, *supra*.  Number eight is bad for substantially the same reason. Number sixteen is bad for the reason given in passing on the question of the admission of plaintiff's evidence of the payment of the taxes on the 200 acres for the years 1870 to 1878, inclusive.   Number seventeen is bad for substantially the same reason.

Wherefore, for the errors' in the rulings of the court on the former trial, herein noted, we are of the opinion to affirm the judgment awarding defendants a new trial.

*Affirmed.*